Filed 6/19/14

# IN THE SUPREME COURT OF CALIFORNIA

| | |
|---|---|
| LUIS M., a Minor, | ) |
| | ) |
| Petitioner, | ) |
| | ) S207314 |
| v. | ) |
| | ) Ct.App. 2/7 B238460 |
| THE SUPERIOR COURT OF | ) |
| LOS ANGELES COUNTY, | ) |
| | ) Los Angeles County |
| Respondent; | ) Super. Ct. No. MJ20593 |
| | ) |
| THE PEOPLE, | ) |
| | ) |
| Real Party in Interest. | ) |
| _____ | ) |

Luis M. challenges an order that he pay the City of Lancaster (the City) over $3,800 in restitution for felony vandalism based on nine acts of defacement by graffiti. The Court of Appeal granted this minor's writ of mandate.

When a minor's actions involve graffiti, the Legislature has expanded the juvenile court's general authority to grant restitution. It has enacted a tailored scheme permitting reliance on a city's average costs to investigate and remediate graffiti. (Welf. & Inst. Code, §§ 742.14 & 742.16.)[1] The statutes contain specific guidelines for what costs may be included. They also require periodic review and

_____

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

adoption of a local ordinance.  The City had not passed such an ordinance nor had it reviewed its "cost model" within the statutory timeframe.  Thus, the expanded restitution model cannot support the award here.  The court had more general restitution authority under section 730.6.  As explained below, however, the court's award was not based on sufficient evidence that the amount of claimed loss was a result of Luis's conduct.  The award also included police investigation costs not usually recoverable under the more general restitution statutes.

Accordingly, we affirm the judgment of the Court of Appeal, which directs the juvenile court to vacate its restitution order and to hold a new restitution hearing.

## I.  BACKGROUND

Accused in a section 602 petition of committing felony vandalism,[2] Luis admitted he had done so and was placed on probation with deferred entry of judgment.[3]  As to restitution, crime prevention officer Marleen Navarro testified that the offense involved nine acts of graffiti at six locations.  She did not produce

---

[2]     Penal Code, section 594, subdivisions (a) and (b)(1).

[3]     A minor against whom a section 602 petition has been filed may be granted deferred entry of judgment under certain circumstances.  (§ 790, subd. (a).)  Although the restitution statutes discussed herein refer to a minor "found to be a person described in Section 602" (§§ 730.6, subd. (a)(1), 742.16, subds. (a), (b), (c)), the juvenile court's order granting deferred entry of judgment may include a requirement that the minor "pay restitution to the victim . . . pursuant to the provisions of this code."  (§ 794; accord, *G.C. v. Superior Court* (2010) 183 Cal.App.4th 371, 374.)  If the minor performs satisfactorily, the petition will be dismissed and the court records sealed.  (§ 793, subd. (c).)  Because there is no appealable judgment (§ 800, subd. (a); *In re T.C.* (2012) 210 Cal.App.4th 1430, 1433; *In re Mario C.* (2004) 124 Cal.App.4th 1303, 1307-1309), the Court of Appeal entertained the minor's challenge to the restitution order by writ of mandate (see, e.g., *G.C. v. Superior Court, supra,* at pp. 374, 378; *Terry v. Superior Court* (1999) 73 Cal.App.4th 661, 663; cf. *Ricki J. v. Superior Court* (2005) 128 Cal.App.4th 783, 792-793).

photographs or otherwise describe the graffiti except to note that it involved a traffic arrow sign and several electrical boxes.

Navarro used a 2006 cost model to estimate annual abatement costs. The five-year-old model included: (1) the labor costs for public works personnel to remove graffiti and a sheriff's deputy to investigate the incidents; (2) the cost of the vehicles, sprayers, and other equipment used for abatement; (3) the cost of paint and cleaning supplies; (4) the cost of contract services for tracking graffiti; and (5) traffic control and risk management costs.

Navarro had no information about the actual abatement costs related to Luis's conduct. However, she testified that in 2006 the City had spent $1,380,208 abating approximately 3,200 incidents of graffiti at an average cost of $431.32 per incident.[4] Using the 2006 data, she estimated that the City spent $3,881.88 to abate Luis's acts of graffiti in 2011. The juvenile court ordered restitution in that amount, over Luis's objection.

We granted review to decide how a juvenile court may calculate restitution to a governmental entity for graffiti abatement.

## II. DISCUSSION

Enacted in 1982, Proposition 8, the "Victims' Bill of Rights," amended the California Constitution to provide that "all persons who suffer losses" resulting from crime are entitled to "restitution from the persons convicted of the crimes causing the losses." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) In 1983, the Legislature enacted Penal Code section 1202.4, which requires a full victim restitution order in criminal cases for every determined economic loss unless there

---

[4] Although she did not have a cost model for 2011, when Luis committed his crimes, Navarro estimated the City's costs had doubled based on 3,000 reported graffiti incidents in the first half of that year.

3

are compelling and extraordinary reasons not to do so.  (Pen. Code, § 1202.4, subd. (f).)  In 1994, the Legislature enacted section 730.6 to provide "parallel restitutionary requirements for juvenile offenders."  (*People v. Birkett* (1999) 21 Cal.4th 226, 240, fn. 15.)[5]

An order of direct victim restitution acts to make the victim whole, rehabilitate the minor, and deter future delinquent behavior (*In re M.W.* (2008) 169 Cal.App.4th 1, 6; accord, *People v. Cookson* (1991) 54 Cal.3d 1091, 1097), and is reviewed for abuse of discretion (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132; accord, *People v. Stanley* (2012) 54 Cal.4th 734, 737).  " 'In keeping with the [voters'] "unequivocal intention" that victim restitution be made, statutory provisions implementing the constitutional directive have been broadly and liberally construed.' "  (*Stanley, supra*, at p. 737, quoting *People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525.)

As relevant here, section 730.6, subdivision (a)(2) provides:  "[T]he court shall order the minor to pay, in addition to any other penalty provided or imposed under the law . . . [¶] . . .  [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h)."  Subdivision (h) provides in part:  "Restitution ordered pursuant to subparagraph (B) of paragraph (2) of subdivision (a) shall be imposed in the amount of the losses, as determined. . . .  The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . A restitution order . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined

---

[5]    At that time, two other statutes also addressed restitution in juvenile cases: former section 729.6 (probationary juvenile offenders) and former section 731.1 (juvenile offenders committed to the California Youth Authority).  (*People v. Birkett*, *supra*, 21 Cal.4th at p. 241, fn. 16.)  Both statutes were repealed in 1995.  (Stats. 1995, ch. 313, §§ 20, 23, p. 1775.)

economic losses incurred *as the result of the minor's conduct* for which the minor was found to be a person described in Section 602, including . . . [¶] (1) Full or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the *actual cost* of repairing the property when repair is possible." (Italics added.)

These general provisions do not authorize restitution orders for law enforcement investigative costs. (See *People v. Martinez* (2005) 36 Cal.4th 384, 393 & fn. 1 (*Martinez*) [discussing Pen. Code, § 1202.4]; *People v. Ozkan* (2004) 124 Cal.App.4th 1072, 1077 [same]; *People v. Torres* (1997) 59 Cal.App.4th 1, 4-5 [same].) "Under the relevant case law and the statutory scheme, public agencies are not directly 'victimized' for purposes of restitution under Penal Code section 1202.4 merely because they spend money to investigate crimes or apprehend criminals." (*Ozkan, supra*, at p. 1077.)

In addition to these general restitution provisions, the Legislature has specifically provided for recovery of graffiti remediation costs. In 1994, the Legislature added the Graffiti Removal and Damage Recovery Program (Graffiti Program) as part of the Welfare and Institutions Code. (§ 742.10 et seq.; Stats. 1994, ch. 909, § 11, p. 4603 et seq.) The aim of this legislation is to (1) help public and private property owners recover full damages from a minor who so defaces property; (2) safeguard the fiscal integrity of cities and counties by enabling them to recoup the full costs of graffiti remediation, as well as the costs of identifying and apprehending the minor; (3) minimize the costs of collecting restitution; (4) deter graffiti; and (5) rehabilitate the minor. (§ 742.10, subds. (a)-(f).)

The Graffiti Program authorizes a city or county to calculate and recover restitution based on average costs rather than requiring individualized proof under the general provisions of section 730.6. Specifically, section 742.14, subdivision

(a), permits adoption of a city or county ordinance authorizing a probation officer to recoup, through juvenile court proceedings, the costs of graffiti remediation. The ordinance must include findings of "the average costs per unit of measure incurred by . . . law enforcement . . . in identifying and apprehending" violators of certain crimes.[6] (§ 742.14, subd. (b).) Further, if the city or county has authorized the use of public funds to remediate graffiti (Gov. Code, § 53069.3), the ordinance must include findings of "the average cost . . . per unit of measure of removing graffiti and other inscribed material, and of repairing and replacing property of the types frequently defaced with graffiti . . . that cannot be removed cost effectively." (§ 742.14, subd. (c).) Government Code section 53069.3 defines "city or county funds" used to remove graffiti as including "court costs, attorney's fees, costs of removal of the graffiti . . . , costs of repair and replacement of defaced property, costs of administering and monitoring the participation of a defendant and his or her parents . . . in a graffiti abatement program, and the law enforcement costs incurred by the city or county in identifying and apprehending the person who created, caused, or committed the graffiti . . . on the publicly or privately owned . . . property within the city or county." (Gov. Code, § 53069.3, subd. (d)(3).) The cost findings "shall be reviewed at least once every three years, at which time the city [or] county . . . , by resolution, shall adopt updated cost findings in accordance with subdivisions (b) and (c)." (§ 742.14, subd. (a).)

Section 742.16 addresses the juvenile court's authority to make a restitution award. If the graffiti causes a public entity to remove graffiti or repair or replace damaged property in accordance with the provisions of section 742.14, the court must determine the total remediation costs as well as the costs of identifying or

---

[6]     One such crime is vandalism (Pen. Code, § 594), at issue here.

6

apprehending the minor. In doing so, the court must use, if applicable, the cost findings most recently adopted by the public entity under section 742.14, subdivisions (b) and (c), and must order the minor to pay them, to the extent of the minor's ability to do so. (§ 742.16, subds. (b), (c).) The statute includes a "presumption affecting the burden of proof that the findings of the court made pursuant to subdivisions (a), (b), and (c) represent the actual damages and costs attributable to the act of the minor that forms the basis of the finding that the minor is a person described in Section 602." (§ 742.16, subd. (h).)

In 2009, the Legislature also amended the definition of "victim" in the *general restitution statutes* (Pen. Code, § 1202.4, subd. (k); § 730.6, subd. (j)), to include "[a]ny governmental entity that is responsible for repairing, replacing, or restoring public or privately owned property that has been defaced with graffiti or other inscribed material, as defined in subdivision (e) of Section 594, and that has sustained an economic loss as the result of a violation of Section 594, 594.3, 594.4, 640.5, 640.6, or 640.7 of the Penal Code." (Stats. 2009, ch. 454, §§ 1, 2.)

In discussing the need for legislation, an analysis by the Senate Committee on Public Safety cited *Martinez, supra,* 36 Cal.4th at page 394, where we held that, because the Department of Toxic Substance Control was not a direct victim of the defendant's crime, it was not entitled to recoup costs for remediating conditions created by a methamphetamine laboratory. (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 576 (2009-2010 Reg. Sess.) as amended Apr. 21, 2009, p. 7.) According to the bill's author, " 'Graffiti, distinct from many other crimes, requires proactive enforcement and dedicated investigation. However, the ability of local law enforcement to diligently investigate and prosecute individuals committing acts of graffiti is hampered only by law enforcement's limited resources. [¶] To be successful in our continued fight against graffiti, it is critical that local governments are able to recover costs of

7

graffiti abatement via criminal restitution.' " (*Id*. at p. 6.) The bill analysis observed that "[t]his bill specifically includes a governmental entity that is responsible for the replacing or restoring of public or private property that has been vandalized in the definition of victim for the purposes of restitution." (*Id*. at p. 8.)

In sum, two statutory approaches expressly authorize restitution awards to government entities for a minor's act of graffiti. The general statute, section 730.6, subdivision (h), authorizes full restitution for economic losses, including "the *actual cost* of repairing [damaged] property when repair is possible." (§ 730.6, subd. (h)(1), italics added.) Awards under section 730.6 are based on proof of the damage actually linked to *the minor's conduct* and do not include investigative costs. In contrast, sections 742.14 and 742.16 of the Graffiti Program authorize restitution based on the average costs for graffiti investigation and remediation per unit of measure. Under the City's model, a unit is defined as an incident of graffiti.

As noted, the City's 2006 cost model included five categories of expenses: (1) the labor costs for investigation and graffiti removal; (2) equipment costs; (3) supply costs; (4) the cost of contract services for tracking graffiti; and (5) traffic control and risk management costs. The City calculated the average cost of graffiti abatement at $ 431.32 per incident. However, the City did not take all the necessary steps to permit reliance on the model.

It did authorize by ordinance the use of city funds to abate graffiti as a nuisance. (Lancaster Mun. Code, §§ 9.24.030, 9.24.040; see Gov. Code, §§ 38773, 53069.3.) It also provided that those found guilty of certain offenses, including vandalism, would be "liable to the city for costs incurred by the city for the removal of graffiti as authorized by this chapter." (Lancaster Mun. Code, § 9.24.050.) It adopted the definition of "costs" set out in Government Code

8

section 53069.3, subdivision (d)(3) (Lancaster Mun. Code, § 9.24.010), and authorized recovery of city expenses through a lien against the responsible person(s) (*id*., § 9.24.060; see Gov. Code, §§ 38772-38773.2).  But it failed to adopt an ordinance authorizing the probation department to recoup its costs as restitution in a juvenile proceeding, nor did it update its cost findings within the three years preceding the order here.  (§ 742.14, subds. (a), (b), (c).)  These failures made the City's cost model unavailable as a basis for determining restitution under sections 742.14 and 742.16.  The People do not contend otherwise.[7]

Nonetheless, the People argue that the court could rely on the model to compute restitution under the general provisions of section 730.6.  They observe: "Particularly under circumstances as in this case where it is impractical or nearly impossible to obtain the exact amount of restitution, a large city's reliance on an average cost model to calculate a restitution award is both logical and rational." They dismiss the City's failure to comply with sections 742.14 and 742.16, reasoning that "[b]ecause it is lawful [under section 742.16] for the probation department, in order to collect restitution for the city, to rely on the city's findings of its average costs to clean up vandalism, then it should not be an abuse of discretion for a trial court to also directly rely on such an average [under section 730.6]."

This argument overlooks section 730.6's statutory requirements.  This more general statute authorizes restitution for "the *actual cost* of repairing the property when repair is possible."  (§ 730.6, subd. (h)(1), italics added.)  The general statute further provides that restitution "shall be of a dollar amount sufficient to fully

_____

**7**     Accordingly, we need not decide whether the various components included in the City's cost model were authorized under these statutes.

9

reimburse the victim or victims for all determined economic losses incurred *as the result of the minor's conduct . . . .*" (§ 730.6, subd. (h), italics added; see *In re A.M.* (2009) 173 Cal.App.4th 668, 672-674.) This language requires the court to take into account the conduct of the minor from whom restitution is sought.

Under the general statute, a restitution award for economic losses (§ 730.6, subds. (h), (j)(2)) may include the materials, equipment, and labor costs incurred for remediation. Preexisting expenditures, such as salaried employees and equipment purchases, may be included provided those costs can be fairly apportioned on a pro rata basis to the minor's conduct. (See *In re Johnny M.*, *supra*, 100 Cal.App.4th at p. 1134.) "Any other rule would encourage public entities and other victims to incur out-of-pocket expenses rather than try to repair damage to the property in-house . . . . No public policy is served by such a rule, and, as we have noted, it is not compelled by statute." (*Ibid.*) This summary is not intended as an exhaustive list. The court ultimately retains discretion to fix the amount of restitution using "any rational method . . . provided it is reasonably calculated to make the victim whole . . . ." (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391.)

While the court need not ascertain the exact dollar amount of the City's losses (*In re Brittany L., supra*, 99 Cal.App.4th at p. 1391), its calculation under section 730.6 must have some factual nexus to the damage caused by the minor's conduct. For example, *People v. Ortiz* (1997) 53 Cal.App.4th 791 approved $2,000 in restitution ordered under Penal Code section 1202.4, based on an estimated number of pirated music cassette tapes the defendant sold, multiplied by an estimated loss of $1 per tape. Although there was no direct evidence of how many counterfeit tapes were sold, the court concluded it was a rational estimate of sales based on the amount of money the defendant had at the time of her arrest, the number of counterfeit tapes in her possession, the fact she would sell tapes in lots

10

of 250, and proof that at least one person was selling tapes supplied by the defendant.  (*Ortiz*, at pp. 798-800; cf. *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [an award of victim restitution as a condition of probation under Pen. Code, § 1203.1 is not "limited to the exact amount of the loss in which the defendant is actually found culpable"].)

Here, the juvenile court based its estimate on an *average of all costs* of graffiti cleanup rather than a rational estimate of costs occasioned by Luis's conduct.  The People provided no evidence of the size or type of Luis's graffiti.  There was no evidence about the materials, equipment, and labor required to remove it.  We cannot determine, for example, if the City painted over a small area or used more expensive equipment to restore the property's surface.  Luis objected to several components of the City's cost model on the grounds that they lacked foundation, were not shown to apply to his conduct, and included nonrecoverable costs.  The juvenile court overruled these objections, remarking that a cost model does not reflect the expenses involved in a particular case and that "we are not going to have mini trials within a trial."  The court abused its discretion.  It conflated the showings required by the general restitution statute with the broader use of cost averaging under the Graffiti Program.

The City's model also included law enforcement investigative costs, which, as noted, are not generally recoverable under section 730.6.  (See, *ante*, at p. 5.)  As discussed *ante* at pages 7 to 8, legislative amendments to section 730.6 expanded the definition of victim beyond that recognized in *Martinez, supra,* 36 Cal.4th at page 393, when a governmental entity is responsible for "*repairing, replacing, or restoring* public or privately owned property that has been defaced with graffiti."  (§ 730.6 subd. (j)(2), italics added.)  The amendment allows a city to recover its direct abatement costs but does not include the costs of

11

investigation.**8**  Accordingly, the juvenile court abused its discretion by awarding restitution based on an estimate that included investigative costs.

The People, and the City as amicus curiae, argue that it is untenable for governmental entities to prove actual costs incurred to remediate individual acts of graffiti, and that such a requirement might cause them to abandon all efforts to seek restitution.**9**  Expediency, however, does not trump the express statutory requirements of section 730.6.  Furthermore, the City has practical means to recoup its losses for graffiti abatement.  First, it can simply pass the ordinance and conduct the periodic reviews called for by the Graffiti Program statutes.  Second, the trial court retains broad discretion under section 730.6 to estimate the material, equipment, and labor costs necessary to repair the damage caused by a discrete act of graffiti.  According to the record before us, the City photographs graffiti as part of its investigation and tracks all incidents by computer.  The photographs presumably reflect the size, extent, and type of graffiti involved.  Using such evidence, a witness familiar with graffiti abatement could estimate the average cost per square foot (or other measure) to paint over or otherwise restore the

---

**8**      Compare section 742.14, subdivision (b) (the city or county may recover "the average costs per unit of measure incurred by the law enforcement agency with primary jurisdiction . . . in identifying and apprehending a person subsequently convicted of" various enumerated crimes, including vandalism).

**9**      The City postulates that employees "would need to stop at each step of their work to measure and record minute details, such as:  time spent on sandblasting[,] . . . water spraying[,] . . . painting[,] . . . installing traffic signs[,] . . . calculating and recording data . . ." as well as "type(s) and quantit(ies) of solvent used[,] . . . paint used[,] . . . bicarbonate soda used[,] . . . fuel used for equipment and transportation[,] current fuel prices[,] type(s) and quantit(ies) of traffic signs[,] type(s) and quantit(ies) of brushes used[,] amount of brush strokes used[,] and exact mileage to each individual incident."

defaced surfaces. Alternatively, business records reflecting time and materials might provide a rational basis for estimating costs.

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**KENNARD, J.***

_____

\* Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Luis M. v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 210 Cal.App.4th 983
**Rehearing Granted**

_____

**Opinion No.** S207314
**Date Filed:** June 19, 2014

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Benny C. Osorio

_____

**Counsel:**

Ronald L. Brown, Public Defender, Albert J. Menaster, Guillermo Arevalo-Farias and Rourke F. Stacey, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Steve Cooley and Jackie Lacey, District Attorneys, Brentford J. Ferreira, Phyllis Asayama, Roberta Schwartz and Cassandra Hart, Deputy District Attorneys, for Real Party in Interest.

Stradling Yocca Carlson & Rauth, Allison E. Burns and David C. Palmer for City of Lancaster as Amicus Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Rourke F. Stacey
Deputy Public Defender
320 West Temple Street, Suite 590
Los Angeles, CA  90012
(213) 893-0004

Cassandra Hart
Deputy District Attorney
320 West Temple Street, Suite 540
Los Angeles, CA  90012
(213) 974-5911