Filed 5/26/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| NATIONWIDE INSURANCE COMPANY OF AMERICA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRAYBA TIPTON et al.,<br><br>    Defendants and Appellants. | C095606<br><br>(Super. Ct. No. STK-CV-UEJ-2021-0003959) |

APPEAL from a judgment of the Superior Court of San Joaquin County, Robert T. Waters, Judge. Affirmed.

Richard G. Hyppa for Defendants and Appellants.

Hines Hampton Pelanda, Marc S. Hines and Brian Pelanda for Plaintiff and Respondent.

1

After defendants Frayba Tipton and William Tipton pled guilty to committing insurance fraud, they were ordered to pay victim restitution to Nationwide Insurance Company of America (Nationwide). Later, Nationwide petitioned the trial court to convert the criminal restitution orders to civil judgments against both defendants. Defendants opposed. Relying on Penal Code[1] section 1214, the trial court granted Nationwide's petition and entered civil judgments against the defendants.

On appeal, defendants argue the trial court erred because (1) Nationwide "failed to provide citation to any . . . authority supporting" conversion of the victim restitution orders to civil judgments, and (2) Nationwide's petition lacked supporting evidence.

We conclude defendants' first argument is unpersuasive because trial courts have the authority to deem restitution orders money judgments. The plain language of section 1214 equates a restitution order to a civil judgment and articulates how such orders can be enforced within the criminal courts, but if a civil court is asked to convert such a restitution order into a civil judgment, as in the case here, it is not error for it to do so. The defendants' second argument—raised for the first time on appeal—lacks merit. Accordingly, we will affirm.

## BACKGROUND[2]

After a fire destroyed defendants' home, they filed an insurance claim in which they overstated losses related to the contents of their home. (*People v. Tipton*, *supra*,

---

[1] Undesignated statutory references are to the Penal Code.

[2] On October 26, 2022, Nationwide requested we take judicial notice of several court records. The court received no opposition from defendants. However, during oral argument on April 17, 2023, counsel for defendants argued against the request. Such a late opposition is not allowed. (See Cal. Rules of Court, rule 8.54(a)(3), (c) ["any opposition" to a written motion filed in a reviewing court "must be served and filed within 15 days after the motion is filed," and "failure to oppose a motion may be deemed a consent to the granting of the motion"].) Accordingly we take judicial notice of all records in Nationwide's appendix concerning (1) defendants' criminal cases, (2) civil

C083065.)  Nationwide alleged in court filings that among the overstated losses was the claimed loss of an original Vincent van Gogh "Starry Night" painting.  Defendants pled guilty to a felony insurance fraud allegation and no contest to a felony perjury allegation, and the trial court placed them on five years of formal probation.  (*Ibid*.)  After informing defendants of their right to have a judicial determination of the amount of restitution that would be owed to Nationwide and holding an evidentiary hearing to determine the amount, the trial court ordered defendants to pay $792,597.22 in victim restitution to Nationwide in 2016.

Around the same time, Nationwide obtained an award of over $1,200,000 in civil litigation between the parties.  Though defendants were later able to have the award against them discharged in federal bankruptcy proceedings, the order of discharge explained that "debts for most fines, penalties, . . . or criminal restitution obligations" were *not* discharged.

In 2020, the probation department informed the parties that it would cease its efforts to collect restitution because probation had expired.  In that same letter, the probation department advised that Nationwide "may wish to consider civil recovery options."  Invoking sections 1202.4 and 1214, Nationwide filed and served on defendants a noticed motion petitioning the civil court to "convert[] into civil judgments" the victim restitution orders from defendants' criminal judgments.  Nationwide argued in a memorandum of points and authorities that conversion would ensure the company "ha[d] all resources available to it to enforce the unsatisfied portion of the restitution."  "For example," the company explained, "because a civil judgment had not been entered" the

---

litigation between the parties, and (3) bankruptcy proceedings defendants initiated in the United State Bankruptcy Court for the Eastern District of California.  Further, on our own motion, we take judicial notice of our prior opinion *People v. Tipton* (May 3, 2019, C083065) [nonpub. opn.].)  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

trial court clerk's office had rejected Nationwide's application to set judgment debtor examinations of defendants.[3]

Through their counsel, defendants opposed, arguing that Nationwide "failed to cite any provision of law" or any case permitting the civil division of the trial court to "enforce or 'convert' criminal court restitution orders" into civil judgments, and principles of res judicata and collateral estoppel barred Nationwide's petition because of prior civil litigation between the parties.

Citing section 1214, subdivision (b), the trial court agreed with Nationwide after the hearing:  "Petitioner's Motion to Convert Criminal Restitution Orders into Civil Judgment is granted, and the Criminal Restitution Orders against Respondents are now converted into Civil Judgment, Penal Code section 1214[, subdivision] (b)."  The court entered civil judgments against each defendant in favor of Nationwide for over $1,000,000 (accounting for the outstanding unpaid restitution, plus 10 percent annual interest).

Defendants timely appealed.

DISCUSSION

I

*Victim Restitution May Be Converted Into a Civil Judgment*

A.     *Relevant Statutes*

With exceptions not germane here, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim." (§ 1202.4, subd. (f).)  A trial court must order

---

[3]  "[T]he purpose of a judgment debtor examination, which is 'to leave no stone unturned in the search for assets which might be used to satisfy the judgment' [citation], is furthered" by "permit[ting] judgment creditors to call witnesses with relevant knowledge of the judgment debtor's assets."  (*Shrewsbury Management, Inc. v. Superior Court* (2019) 32 Cal.App.5th 1213, 1225-1226.)

4

*full* restitution. (*Ibid*.) A restitution order imposed pursuant to section 1202.4, subdivision (f) is enforceable "as if" it was a civil judgment (*id*., subd. (i); § 1214, subd. (b)) and is enforceable "in the same manner as is provided for the enforcement of any other money judgment" (§ 1214, subd. (b)):

"In any case in which a defendant is ordered to pay restitution, the order to pay restitution (1) is deemed a money judgment if the defendant was informed of his or her right to have a judicial determination of the amount and was provided with a hearing, waived a hearing, or stipulated to the amount of the restitution ordered, and (2) shall be fully enforceable by a victim as if the restitution order were a civil judgment, and enforceable in the same manner as is provided for the enforcement of any other money judgment. . . . A victim shall have access to all resources available under the law to enforce the restitution order, including, but not limited to, access to the defendant's financial records, use of wage garnishment and lien procedures, information regarding the defendant's assets, and the ability to apply for restitution from any fund established for the purpose of compensating victims in civil cases. Any portion of a restitution order that remains unsatisfied after a defendant is no longer on probation . . . is enforceable by the victim pursuant to this section." (§ 1214, subd. (b).)

As made clear on the criminal order of restitution used in criminal cases, including the one here, "Penal Code section 1214 provides that once a dollar amount of restitution has been ordered, the order is then enforceable as if it were, and in the same manner as, a civil judgment. . . . This order does not expire under Penal Code section 1214[, subdivision] (d)." (Judicial Council Forms, form CR-110/JV-790.)

B.    *Background Case Law*

Although we have not found any published case applying the relevant statute that is directly on point to the question presented here, a review of what is available makes clear that section 1214, subdivision (b) means what it says — a restitution order is

5

equated to a civil money judgment as it relates to enforcement, including after a defendant's probationary period ends.

In *People v. Hart* (1998) 65 Cal.App.4th 902, 904-907, a panel of this court ruled trial courts have no authority to convert restitution fines owed to public entities into separate money judgments. Discussing section 1214, subdivision (a)'s language that orders to pay restitution fines " 'may be enforced in the manner provided for the enforcement of money judgments generally' " and other statutory language that " '[e]xecution may be issued on the order . . . in the same manner as a judgment in a civil action,' " the panel reasoned legislation did "not authorize the county actually to secure money judgments against defendants," and noted in a footnote that the "statutory scheme" for victim restitution under section 1214, subdivision (b) was "similar." (*Hart*, at pp. 905-906 & fn. 2.) The issue presented in *Hart* relative to restitution *fines* may be similar, but there is fundamental distinction presented by orders for victim restitution.

Here, we are concerned with the rights of victims to full restitution for direct economic loss, as protected by section 1214, subdivision (b). Accordingly, the analysis in *Hart* regarding section 1214, subdivision (a) is not on point. "[R]estitution fines are statutorily defined as punishment imposed within the context of a criminal proceeding. By contrast, victim restitution is discretionary, dependent upon the existence of a victim, and enforceable in civil courts." (*People v. Wilen* (2008) 165 Cal.App.4th 270, 283; see also *People v. Kunitz* (2004) 122 Cal.App.4th 652, 656; *People v. Harvest* (2000) 84 Cal.App.4th 641, 647 ["[V]ictim restitution is a civil remedy which does not require a criminal forum. [Citations.] The governing statutes specify that an order for victim restitution may originate from criminal court, but expressly recognize that such an order 'shall be enforceable as a civil judgment.' [Citations.] It therefore contemplates that subsequent enforcement efforts may occur outside the context of the criminal law."].)

The Victims' Bill of Rights Act of 2008, known as "Marsy's Law," amended article I, section 28 of the California Constitution by expanding and constitutionalizing

6

the protection of victims' rights, including the right to restitution. (See *People v. Gross* (2015) 238 Cal.App.4th 1313, 1317.) A victim's constitutional right to restitution "cannot be bargained away or limited, nor can the prosecution waive" it. (*Id.* at p. 1318.) A court may, at any time, correct a sentence that is rendered invalid due to the omission of a restitution order. (*Ibid.*; § 1202.46.) And victims are *first* in line to receive any money collected from criminal defendants ordered to pay restitution. (Cal. Const., art. I, § 28, subd. (b)(13)(C).) Because the California Constitution guarantees crime victims the right to restitution (*id.*, subd. (b)(13)(B)), that right "is given a broad and liberal construction" and statutes regarding the right should be "construed in the context of the relevant statutory scheme." (*In re J.H.* (2020) 47 Cal.App.5th 495, 500-501.) Section 1202.4 " 'implement[s] the will of the electorate expressed when article 1, section 28, subdivision (b) . . . was added to the California Constitution, that all victims of crime who suffer direct economic loss be compensated.' " (*In re J.H.*, at p. 501.)

     C.     *Victim Restitution in the Juvenile Context*

In the case of *In re J.G.* (2019) 6 Cal.5th 867, our Supreme Court discussed the interplay of provisions in the Welfare and Institutions Code concerning victim restitution[4] with section 1214, subdivision (b), and ruled the juvenile court properly converted[5] unpaid restitution to a civil judgment. (*In re J.G.*, at pp. 873-875.) The

---

[4] Welfare and Institutions Code section 730.6 "mandates that a restitution order issued pursuant to the section 'shall be enforceable as a civil judgment' (*id.*, subd. (i)) and 'may be enforced in the manner provided in Section 1214 of the Penal Code' (*id.*, subd. (r))." (*In re J.G., supra*, 6 Cal.5th at pp. 873-874.) "Subdivision (j) of" Welfare and Institutions Code "section 742.16 specifies that '[e]xecution may be issued on' a restitution order 'issued by the court pursuant to' section 742.16 'in the same manner as on a judgment in a civil action, including any balance unpaid at the termination of the court's jurisdiction over the minor.' " (*In re J.G.*, at p. 874.)

[5] In part because the victim restitution order itself is not a civil judgment, "[t]he victim must present [a restitution] order to the court clerk, who can convert it to a civil judgment." (Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2022) Victim

juvenile appellant conceded that statutes in the Welfare and Institutions Code " 'contain[ed] provisions that allow[ed] unpaid restitution to be converted to a civil judgment,' " but argued those "conversion provisions [did] not apply" to his case. (*In re J.G.,* at p. 874.) Our Supreme Court disagreed (*id.* at pp. 877-878), and held without elaboration that, in the juvenile situation, the Legislature "expressly authorized unpaid restitution in the deferred entry of judgment context to be converted to an enforceable civil judgment." (*Id.* at pp. 875-876.)

In *J.H.*, a panel of this court noted the Legislature's intent "to continue the parallel treatment of criminal and juvenile restitution." (*In re J.H.*, *supra*, 47 Cal.App.5th at p. 501.) Indeed, it would be quite counterintuitive if a victim of conduct by a juvenile were able to convert restitution into a civil judgment while a victim of conduct by an adult were unable to do so. (Cf. *Tiffany A. v. Superior Court* (2007) 150 Cal.App.4th 1344, 1361 ["The objectives of the juvenile justice system differ from those of the adult criminal justice system," because the juvenile justice system is meant to " 'provide measures of guidance and rehabilitation for the child . . . not to fix criminal responsibility, guilt and punishment' "].)

>    D.    *"Confession of Judgment" for the Purpose of Restitution*

In *People v. Farael* (1999) 70 Cal.App.4th 864, 866, the appellate court affirmed a probation condition requiring a criminal defendant to sign a "confession of judgment" — which is "in effect a private admission to liability for a debt without trial, upon which a court places its imprimatur when submitted to the clerk for entry" (*Efstratis v. First*

---

Restitution, § 40.25; see also 3 Witkin, Cal. Crim. Law (4th ed. 2012) Punishment, § 127, p. 229.) Though the practice guide cites no authority for the proposition a victim restitution order can be converted to a civil judgment, "well-respected and widely used practice guide[s]" may "be a persuasive and helpful source in the absence of case law on a topic." (*Samsky v. State Farm Mutual Automobile Ins. Co.* (2019) 37 Cal.App.5th 517, 524; see *Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 95 [quoting authorities for the proposition practice guides " ' "are persuasive indications of what the prevailing law may be" ' "].)

*Northern Bank* (1997) 59 Cal.App.4th 667, 672) — in favor of the insurance company he was convicted of defrauding. In doing so, the appellate court rejected the defendant's argument "that the method of enforcing the restitution" via a confession of judgment was "improper because it [was] a civil, rather than a criminal, remedy." (*Farael,* at p. 866.) Noting a victim restitution order is fully enforceable by a victim as if the restitution were a civil judgment, the appellate court found "no practical or legal difference between a restitution order and a confession of judgment for the purpose of restitution." (*Ibid.*)

    D.    *Analysis*

We conclude the trial court did not err when it converted the restitution orders as it clearly had authority to deem them money judgments pursuant to section 1214, subdivision (b) and properly did so. We reach this conclusion in light of (1) our duty to give a liberal construction to a victim's right to restitution and to construe statutory language concerning that right in the context of the relevant statutory scheme; (2) our recognition that California's victim restitution statutory scheme seeks to ensure full compensation; and (3) our Supreme Court's holding in *J.G.* that it was proper in the juvenile context to convert unpaid restitution to a civil judgment.

Our holding is consistent with case law indicating crime victims may pursue civil remedies for direct economic losses they suffer as a result of criminal conduct regardless of their right to victim restitution in criminal proceedings. (Cf. *People v. Farael*, *supra*, 70 Cal.App.4th at p. 866 [affirming requirement of signed "confession of judgment" as a condition of probation to enforce the right to victim restitution].) In the criminal court, section 1202.4, subdivision (h) authorizes the district attorney to request an order of examination of the defendant's financial assets for purposes of collecting on the restitution order in keeping with the tools provided in the civil arena. So while the victim, through the district attorney, has an ongoing mechanism of enforcement in criminal proceedings, that is not their only route to being made whole. While enforceable as if it were a civil judgment, a restitution order "is *not* a civil judgment" and the victim

9

restitution statutes "demonstrate legislative recognition of the distinct and separate right of a victim to pursue a civil remedy irrespective of the restitution order." (*Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 444.) Based on the foregoing, we reject defendants' argument the trial court erred here.

II

*Supporting Evidence*

Defendants also argue the trial court should have denied Nationwide's petition because the company "did not present any evidence" to support the petition. Nationwide argues defendants forfeited this argument on appeal. Defendants did not file a reply brief addressing Nationwide's forfeiture argument.

We agree with Nationwide that to the extent defendants raised this argument below, they did not raise it properly, as it does not appear in defendants' memorandum of points and authorities opposing Nationwide's petition. Fairness dictates all arguments be presented in the memorandum of points and authorities, which "must contain a statement of facts, a concise statement of the law, evidence and arguments relied on, and a discussion of the statutes, cases, and textbooks cited in support of the position advanced." (Cal. Rules of Court, rule 3.1113(b).) A trial court may decline to consider an argument that does not comply with rule 3.1113 of the California Rules of Court. (*Quantum Cooking Concepts, Inc. v. LV Associates, Inc.* (2011) 197 Cal.App.4th 927, 932-933; *Black v. Financial Freedom Senior Funding Corp.* (2001) 92 Cal.App.4th 917, 925, fn. 9.) Here, the trial court had discretion to ignore arguments defendants did not properly present in their memorandum of points and authorities in opposition to Nationwide's petition.

But the "contention that a judgment is not supported by substantial evidence" is an exception to the general rule that "points not urged in the trial court cannot be raised on appeal." (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17.) Accordingly, to the extent defendants argue on appeal substantial evidence does not support the trial

10

court's ruling, the contention is not forfeited.  It lacks merit, however, given the documents we have taken judicial notice of.  (See fn. 2, *ante*; *In re Vicks* (2013) 56 Cal.4th 274, 314 [taking judicial notice of " 'the truth of results reached' " in court documents].)

DISPOSITION

The judgments are affirmed.  Costs on appeal are awarded to Nationwide.  (Cal. Rules of Court, rule 8.278(a).)

_____/s/_____

BOULWARE EURIE, J.

We concur:

_____/s/_____

DUARTE, Acting P. J.

_____/s/_____

McADAM, J.*

---

* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.