Filed 10/23/23  P. v. Berlier CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>BRYAN ROBERT BERLIER,<br><br>  Defendant and Appellant. | F085227<br><br>(Super. Ct. No. 20CR-06299)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Cameron M. Goodman, Deputy Attorney Generals, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Peña, Acting P. J., Snauffer, J. and DeSantos, J.

Appellant Bryan Robert Berlier was involved in a traffic collision with another vehicle and charged with felony driving under the influence of alcohol (DUI) causing injury and driving with a blood-alcohol level of .08 percent or higher causing injury. Following a jury trial, the jury found appellant not guilty of the offenses as charged and instead found him guilty of the lesser included offenses of misdemeanor driving under the influence and driving with a blood-alcohol level of .08 percent or higher.

The trial court sentenced appellant to one year in jail. At sentencing, appellant had 521 days of custody credits, and the trial court rejected appellant's request to apply his excess custody credits to any fine imposed and imposed a fine of $3,324. Following a restitution hearing where appellant argued restitution was improper given the jury's verdict acquitting him of the offenses causing injury, the trial court ordered appellant to pay direct restitution to the driver of the other vehicle for his chiropractic bills he incurred to treat the injuries he received from the collision in the amount of $3,555.

On appeal, appellant contends (1) the trial court erred by declining to apply his excess custody credits to his fine pursuant to Penal Code[1] section 2900.5 and (2) the trial court erred by ordering direct restitution because the jury acquitted appellant of the offenses where he was alleged to have caused injury to the other driver.

We agree with appellant that the trial court erred by declining to apply his excess custody credits to his fine. Because the record does not indicate the portion of appellant's fine that would be considered the "base fine" under section 2900.5, we must remand the matter for the very limited purpose for the trial court to comply with the statute and reduce appellant's fine accordingly. In all other respects, we affirm the judgment, including the trial court's restitution order.

---

[1]    Further undesignated statutory references are to the Penal Code unless otherwise indicated.

2.

# FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by first amended information with felony DUI causing injury within 10 years of two other DUI offenses (Veh. Code, §§ 23153, subd. (a), 23566, subd. (a); count 1) and driving with a .08 percent blood-alcohol level causing injury within 10 years of two other DUI offenses (Veh. Code, §§ 23153, subd. (a), 23566, subd. (a); count 2).

A jury trial was conducted. Appellant and Merced County Sheriff's Sergeant Jess Aguilar were involved in a traffic collision at an intersection. Aguilar testified he was driving eastbound; he looked over at his computer screen, noticed lights to his left in his peripheral vision, and then just "saw white" and felt the impact of the collision. From the collision, Aguilar suffered airbag burns to one of his earlobes and his forehead. He had bruising to both his knees and right leg, as well as lower back pain. For his back pain, he underwent a 12-month chiropractic treatment program. As of the time of the trial, he felt good.

The California Highway Patrol officer who investigated the collision testified he contacted appellant at the scene and arrested him. The officer based his arrest on appellant exhibiting signs of intoxication, including the odor of alcohol, red and watery eyes, an "extremely" unsteady gait, as well as poor performance on field sobriety tests. Appellant elected to take a blood test at the hospital, which showed he had a blood-alcohol level of 0.277 percent at the time of the test. The criminalist who analyzed appellant's blood sample opined that appellant's blood-alcohol level may have been around 0.31 percent at the time of driving. The criminalist further testified that an individual with a blood-alcohol level of .277 percent would not be able to safely operate a motor vehicle.

The California Highway Patrol officer testified the physical evidence at the scene of the collision led him to believe appellant was traveling westbound and Aguilar was traveling eastbound, and appellant made a left turn directly in front of Aguilar's vehicle

3.

in the intersection, causing the collision.[2]  The officer opined appellant had violated Vehicle Code section 21801, subdivision (a), which provides that drivers intending to turn left "shall yield the right-of-way to all vehicles approaching from the opposite direction which are close enough to constitute a hazard at any time during the turning movement and shall continue to yield the right-of-way to the approaching vehicle until the left turn … can be made with reasonable safety."

Appellant testified in his defense.  He contended he was traveling westbound, but that Aguilar was traveling southbound and collided into him when he was traveling through the intersection with the right of way.

The jury returned verdicts of not guilty for DUI causing injury (Veh. Code, § 23153, subd. (a)) and driving with a .08 percent or higher blood-alcohol level causing injury (Veh. Code, § 23153, subd. (b)).  Instead, the jury returned verdicts of guilty for the lesser included offenses of DUI (Veh. Code, § 23152, subd. (a)) and driving with a .08 percent or higher blood-alcohol level (Veh. Code, § 23152, subd. (b)).

After the jury returned its verdict, the trial court found true appellant had suffered two prior DUI convictions based on appellant's testimony that he was convicted of a DUI on August 31, 2015, and January 30, 2017.

Appellant filed a sentencing brief which asserted that a restitution order would be "an illegal sentence" (unnecessary capitalization omitted) as appellant was acquitted of the charges that alleged he caused injury to Aguilar.  At the sentencing hearing, the trial court indicated it disagreed with appellant's position.  It stated that based on the testimony at trial, the court believed appellant's conduct was a substantial factor in causing Aguilar's injuries.  The court ordered restitution, reserving on the amount, and stated its intention to conduct a restitution hearing when the People had an amount.

---

[2]    The record indicates the officer testified that both vehicles were travelling eastbound, but based upon context, it appears either the officer misspoke or there was a clerical error.

4.

Appellant's presentence custody credits were 521 days. The court sentenced appellant to one year in jail with credit for one year. The court imposed a "fine in the amount of $3,324." Appellant requested the trial court credit 156 days, the amount of excess custody credits, against the fines imposed in the case, and the court denied the request.

Following the sentencing hearing, the prosecutor filed a motion to order restitution in the amount of $3,555 for Aguilar's chiropractic bills.

A restitution haring was conducted, and appellant again set forth his position that restitution was improper given the jury's verdict. Appellant's counsel asserted that in probation cases, the court has wider discretion regarding the types of restitution orders it could make, but because the case was not a probation case, the court was precluded from ordering restitution for costs arising out of Aguilar's injuries because the jury found him not guilty of the charges alleging he caused Aguilar's injuries. After appellant's counsel submitted the matter on the argument, the court ordered restitution in the amount of $3,555 in favor of Aguilar.

## DISCUSSION

### I.    Section 2900.5

Appellant contends the court's denial of his request to apply his excess custody credits to his fine was improper under section 2900.5, which provides in pertinent part:

> "In all felony and misdemeanor convictions … when the defendant has been in custody …, all days of custody of the defendant … shall be credited upon his or her term of imprisonment, or credited to any base fine that may be imposed, at the rate of not less than one hundred twenty-five dollars ($125) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter the remaining days, if any, shall be

applied to the base fine. If an amount of the base fine is not satisfied by jail credits …, the penalties and assessments imposed on the base fine shall be reduced by the percentage of the base fine that was satisfied." (§ 2900.5, subd. (a).)

Respondent concedes error. The parties agree that appellant's excess custody credits total an amount of $19,500 (156 days multiplied by $125 per day) that may be applied to appellant's fine. The parties further agree that Penal Code section 2900.5 does not apply to any assessments imposed pursuant to section 1465.8, subdivision (a)(1) or Government Code section 70373, subdivision (a)(1), or a restitution fine imposed pursuant to section 1202.4. (See *People v. Petri* (2020) 45 Cal.App.5th 82, 92 ["Although a defendant's excess custody credits may be applied to reduce a fine imposed by the trial court, such excess credits may not be applied to reduce victim restitution, a restitution fine, the court operations assessment, or the court facilities assessment."].)

We agree with the parties. Section 2900.5 mandates that appellant's excess custody credits be applied to his base fine. Since appellant's base fine would be satisfied by appellant's excess custody credits, all penalty assessments associated with the base fine would be satisfied as well. (See § 2900.5, subd. (a); see also *People v. Carranza* (2016) 6 Cal.App.5th Supp. 17, 31 [2017 amendment to § 2900.5 unequivocally states custody credits shall be applied to the base fine rather than proportionately to base fine and penalty assessments so as to reduce the amount of days in custody a defendant must spend to satisfy a fine].) In appellant's case, as agreed upon by the parties, it appears the only portion of the total fine that would remain are any restitution fine, court operations assessment, or court facilities assessment. Unfortunately, however, because the record does not contain a breakdown of which portion of the total fine comprises the base fine and associated penalty assessments, and which portion comprises the restitution fine and any nonpunitive assessments, it would be inappropriate for this court to strike any part of the fine as a remedy because that would involve speculation on our part.

Ostensibly to solve this problem, appellant has requested we take judicial notice of a worksheet he has proffered entitled, "Revenue Calculation and Distribution Worksheet," which appellant asserts is "used by the trial court's Collections Department to calculate the numerous fines, penalties and assessments collectively comprising the $3,324 fine imposed by the trial court upon appellant at sentencing." In a declaration filed with the request, appellate counsel explained she "was informed by the trial court's Collections Department that it used the $3,324 total that was ordered by the judge to extrapolate the base fine and the accompanying assessments." Appellate counsel asserts the worksheet is subject to judicial notice under Evidence Code section 452, as "the 'records of any court of this state' " and Evidence Code section 452.5, "as it is a computer-generated official court record." Appellate counsel acknowledges the document is not certified but asserts it is authenticated by the declaration.

On July 19, 2023, this court deferred ruling on appellant's request pending consideration of this appeal on its merits and granted respondent leave to file an informal response. Respondent did not file an informal response and noted in its respondent's brief it did not oppose the request.

Though respondent does not oppose appellant's request for judicial notice, we decline to grant it. "There is … a precondition to the taking of judicial notice in either its mandatory or permissive form—any matter to be judicially noticed must be relevant to a material issue." (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.) We conclude the document proffered by appellant is not relevant to the issue of what portion of appellant's fine must be stricken, as it does not represent the court's order of the components of the total fine; rather, it is an "extrapolation" prepared by the "Collections Department." It is not clear from the request for judicial notice or the document itself how the "extrapolation" was calculated, for what purpose the worksheet was generated or how or if it is routinely used, or whether the worksheet accurately represents the order of the trial court. Most relevant for our purposes, it is unclear what

7.

amount of restitution fine was imposed, which would make an impact on the amount of appellant's fine that must be stricken. For a misdemeanor, a court may impose a restitution fine between $150 and $1,000. (§ 1202.4, subd. (b)(1).) In one column in the worksheet provided by appellant, under "PC 1202.4(b)," a restitution fine in the amount of $150 is listed; in another column on the same line $234.86 is listed, and in another column $230.16 is listed. Though both parties agree the court imposed a restitution fine of $150, they do not cite any portion of the record before us to support this claim, and the worksheet does not appear to elucidate things.[3] For these reasons, we deny appellant's request to take judicial notice of the worksheet.

In sum, we do agree with the parties that the court erred by declining to apply appellant's excess custody credits to the base fine (and corresponding penalty assessments), excluding the court operations assessment, court facilities assessment, and restitution fine. As we have explained, however, we cannot ascertain what portion of the total fine comprises of nonpunitive assessments and the restitution fine, and therefore not reduceable by section 2900.5. Thus, the matter must be remanded with directions to the trial court to comply with section 2900.5, subdivision (a) and apply appellant's excess custody credits to his base fine in a manner consistent with the views expressed in this opinion.

## II. Restitution Order

Appellant contends the imposition of direct restitution was improper because the jury found appellant not guilty of the offenses where he was alleged to have caused injury to Aguilar. We disagree.

---

[3] Rather, the column on the worksheet, which contains the amount of $150, is entitled, "STANDARD BASE-UP," with a total fine of $2,123. There are two columns with $3,324 listed as the total fine (the total actually imposed) entitled, "IAS TOP-DOWN"; these columns contain the restitution fines of $234.86 and $230.16.

The California Constitution provides, "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence of disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13)(B).) Penal Code section 1202.4, subdivision (a)(1) provides: "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." In most cases, when "a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).)

A restitution order is enforceable as if the order were a civil judgment. (§ 1202.4, subd. (a)(3)(B).) " '[D]irect victim restitution is a substitute for a civil remedy so that victims of crime do not need to file separate civil suits. It is not increased "punishment." ' " (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1398 (*Foalima*); see *People v. Harvest* (2000) 84 Cal.App.4th 641, 649 [Legislature intended victim restitution as a civil remedy rather than criminal punishment]; see also *People v. Smalling* (2019) 36 Cal.App.5th Supp. 1, 11, fn. 10 [denial of victim restitution not harmless because " '[T]he primary purpose of a victim restitution hearing is to allow the People to prosecute an expedited hearing before a trial court to provide a victim with a civil remedy for economic losses suffered….' [Citation.] This objective is not satisfied by substituting a victim's statutory and constitutional right to a restitution hearing with a civil lawsuit and its attendant costs, discovery, and delays."].)

We review the trial court's restitution order for abuse of discretion. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305.) "No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. ' "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt." ' " (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542;

see *Foalima*, *supra*, 239 Cal.App.4th at pp. 1398–1399 ["[T]he court's determination [of restitution] may be established by a preponderance of the evidence. The higher standard of proof applies to facts that increase a crime's penalty beyond what a judge could impose based on the applicable statute and the facts in the record…. Since direct restitution is not a criminal penalty and is not subject to a statutory minimum amount, it is not subject to a jury trial and may be imposed based on the preponderance of the evidence."].)

The thrust of appellant's argument is that the prosecutor below relied primarily on probation cases, which were inapposite because a trial court has broader discretion to order direct restitution as a condition of probation than in nonprobation cases. Appellant cites *Foalima*, *supra*, 239 Cal.App.4th 1376 and *People v. Percelle* (2005) 126 Cal.App.4th 164, 180 to support the statement: " '[I]n the nonprobation context, a restitution order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted.' " Applying this logic, appellant contends that because the jury "acquitted appellant of the counts that involved causing any injury to Aguilar … the award of victim restitution for Aguilar's chiropractic treatment was improper." While appellant's transcription of the rule of law statement regarding restitution in nonprobation cases is accurate, the statement must be read in context. The relevant passage in *Foalima*, reads:

> " 'When judgment is imposed and the defendant sentenced to a period of incarceration (in prison or jail), the court may order restitution only for losses arising out of the "criminal conduct for which the defendant has been convicted." [Citation.]' [Citation.]
>
> "This, however, does not mean the court could not require defendant to make restitution simply because he was acquitted of one of the many counts charged against him. 'The introductory paragraph of [Penal Code] section 1202.4 states the legislative intent, i.e., that the victim of a crime should receive restitution directly from any defendant *convicted of that crime*. This language is clear and unambiguous. Indeed, our Supreme

10.

Court has recognized that ordinarily an acquittal would preclude the court from including the loss related to that crime in a restitution order. [Citation.] *That is not to say that an acquittal on one count will preclude the imposition of a restitution order under all circumstances.* We merely hold that in the nonprobation context, a restitution order is not authorized where the defendant's *only* relationship to the victim's loss is by way of a crime of which the defendant was acquitted.' " (*Foalima*, at pp. 1395–1396, italics in original.)

*Foalima* illustrates this concept and is instructive in the present case. In *Foalima*, the defendant killed a man in the man's daughter's apartment. Fires had been started in several rooms in the apartment, which investigators opined to have been deliberately set. The forensic pathologist testified the victim had been set on fire after he died. (*Foalima*, *supra*, 239 Cal.App.4th at pp. 1380–1382.) The jury convicted the defendant of first degree murder but acquitted him of arson, and the trial court ordered the defendant to pay direct restitution including the cost to cover the victim's daughter's clothing and household goods damaged in the fire. (*Id*. at p. 1387.) The defendant argued he was not properly ordered to pay victim restitution to cover items lost in the fire since he was acquitted of arson. (*Id*. at pp. 1394–1395.) The *Foalima* court disagreed.

The *Foalima* court explained that one of the trial court's tasks at a restitution hearing is to "determine whether the criminal conduct for which [the] defendant was convicted was the proximate cause of the damage [in that case]." (*Foalima*, *supra*, 239 Cal.App.4th at p. 1396.) Specifically, the trial court must decide whether the criminal conduct was a "substantial factor in bringing about the injury"; a "defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct." (*Id*. at p. 1396.) As we have stated, this determination may be made by a preponderance of the evidence. (*Id*. at pp. 1398–1399.) In the case before it, the *Foalima* court determined the trial court did not abuse its discretion in determining the defendant's actions were the proximate cause of the victim's daughter's economic losses based on the facts and circumstances of the case, as the trial court could have concluded that even though the defendant was acquitted of arson, the victim's daughter would not have

11.

incurred damages from the fire if there had been no murder. (*Id*. at pp. 1397–1398.) The appellate court determined the trial court's conclusion was reasonable based in part on the fact that "it was reasonably foreseeable that [the] defendant or his accomplices would act to destroy evidence." (*Id*. at p. 1397.)

We acknowledge that a court has broader discretion in ordering victim restitution as a condition of probation than when probation is not ordered (*People v. Giordano* (2007) 42 Cal.4th 644, 663, fn. 7), and probation was not ordered in the present case. We further acknowledge, as appellant urges us to, that the People below, and respondent on appeal, rely mostly on probation cases to support their position that direct restitution is appropriate in the present case. Bearing in mind these circumstances, we nonetheless conclude the trial court did not abuse its discretion in ordering restitution in the present case. As *Foalima* demonstrates, when restitution is requested in nonprobation cases, the trial court nonetheless has a task separate from the jury's in determining whether the criminal conduct is a proximate cause of the victim's economic losses by a preponderance of the evidence.

As such, like *Foalima*, when the People moved for an order for direct restitution, the court was tasked with determining whether the criminal conduct for which appellant was convicted was the proximate cause of Aguilar's economic losses even though he was acquitted of a charge arising from the same incident. While we recognize this case differs from *Foalima* in that the jury acquitted appellant of a crime with causation of injury as an element of the offense, we do not find this precluded the trial court from making its own factual determinations based on appellant's criminal conduct for which he was convicted because the jury and the trial court were applying different standards of proof. Other courts have noted that where, like here, a defendant is acquitted of a greater offense and convicted of a lesser included offense, a trial court is permitted to find that any element of the acquitted offense is true by a preponderance of the evidence for purposes of necessary postconviction determinations absent express factual findings by

12.

the jury. (See *People v. Levitt* (1984) 156 Cal.App.3d 500, 515 [jury's acquittal of murder but conviction of manslaughter indicates the jury did not make a finding of malice beyond a reasonable doubt, but the trial court was permitted to make such a finding by a preponderance of the evidence for purposes of determining a sentence within the range of permissible sentences under former sentencing law], disapproved on other grounds by *People v. Johnson* (2016) 62 Cal.4th 600, 649, fn. 6.)

The jury in the present case did not make an express factual finding that appellant *did not* cause Aguilar's injuries, only that the People had not proven the case beyond a reasonable doubt.[4] (See CALCRIM No. 200 ["Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."].) They did, however, make an express factual finding that appellant was guilty of criminal conduct of driving under the influence of alcohol. Because the jury did not acquit appellant of criminal conduct related to the incident altogether, the jury's not guilty verdicts did not preclude the trial court from determining by a preponderance of the evidence that appellant's criminal conduct for which he was convicted, i.e., driving under the influence of alcohol, caused Aguilar's injuries. Our conclusion is not contradicted by the cases cited by appellant and is supported by one of the purposes of direct victim restitution we have outline above—to avoid a crime victim having to file a civil action to recover damages resulting from the crime.

We conclude the trial court's finding that appellant's criminal conduct was a substantial factor in causing Aguilar's injuries was not an abuse of discretion; it was

---

**4** The record indicates that one possible reason for the jury's verdict is that they did not find the People had proven Aguilar suffered an injury. After deliberating for approximately five and a half hours, they submitted a question which read, "What is the definition of an injury as it pertains to this case?" They were directed to "Jury Instruction #200," paragraph 6, which includes the statement: "Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings." The jury reached its verdict about 50 minutes after receiving the answer.

13.

reasonably supported by a preponderance of the evidence by the criminologist's opinion appellant was intoxicated to the point of unsafe driving, the California Highway Patrol officer's opinion that appellant was at fault for the collision by making an unsafe left turn, and Aguilar's testimony he suffered a lower back injury resulting from the collision, which required a year of chiropractic treatment.  The trial court did not err by ordering direct restitution under the circumstances of the present case.

## DISPOSITION

The matter is remanded with directions for the trial court to apply appellant's excess custody credits to his fine pursuant to section 2900.5.  In all other respects, the judgment, including the restitution order, is affirmed.