Filed 12/4/25  P. v. Superior Court (Jones) CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>SAN BERNARDINO COUNTY,<br><br>    Respondent;<br><br>PHILLIP JONES,<br><br>    Real Party In Interest. | E085239<br><br>(Super.Ct.No. WHCSB2400033)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Gregory S. Tavill, Judge.  Petition denied.

Jason Anderson, District Attorney (San Bernardino) and Philip P. Stemler, Deputy District Attorney, for Petitioner.

1

No appearance by Respondent.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Real Party in Interest.

Galit Lipa, State Public Defender, Nerissa J. Huertas and Brooke L. McCarthy, Deputy State Public Defenders as Amicus Curiae on behalf of Real Party in Interest.

In 2024, Phillip Jones filed a petition for writ of habeas corpus in the superior court seeking relief under the California Racial Justice Act of 2020 (RJA) (Stats.2020, ch. 317, § 1).  (See Pen. Code, § 745; unlabeled statutory references are to this code.)  Applying the prima facie standard set forth in subdivision (h)(2) of section 745 (§ 745(h)(2)), respondent superior court determined that Jones had made a prima facie showing of entitlement to relief under subdivision (a)(1) of section 745, and the court accordingly issued an order to show cause.

The San Bernardino County District Attorney (the District Attorney) filed a petition for writ of mandate, arguing that the superior court erred by not applying the higher prima facie standard set forth in *People v. Duvall* (1995) 9 Cal.4th 464, 474 (*Duvall*) that generally applies in habeas corpus proceedings.  We disagree and deny the petition.

BACKGROUND[1]

Jones is African American. (*People v. Cielto*, *supra*, E025088.) In 1999, a jury convicted him and a codefendant of four counts of second degree robbery (§ 211) and three counts of felony false imprisonment (§ 236) arising from the commission of an armed bank robbery that they committed with two other men. (*People v. Cielto*, E025088.) The jury also found true personal use firearm enhancements as to each count. (§ 12022.5, subd. (a).) The trial court sentenced Jones to 40 years in state prison. Jones appealed, and we affirmed the judgment in an unpublished opinion. (*People v. Cielto*, E025088.)

In January 2024, Jones filed a motion for relief under the RJA. Jones claimed that the RJA was violated numerous times during the trial proceedings, from charging through sentencing. The trial court construed the motion as a petition for writ of habeas corpus. The court appointed defense counsel and denied the petition without prejudice to Jones filing an amended petition.

Jones subsequently filed an amended petition for writ of habeas corpus, alleging "that his conviction and sentencing violate[] the Racial Justice Act as described in Penal Code section 745 subds. (a)(l), (a)(2), (a)(3), and (a)(4)(A), and that he was denied effective assistance of counsel during his trial." He claimed that the trial judge, his trial counsel, and the prosecutor violated the RJA by acting with racially discriminatory

---

[1] We take judicial notice of the record in Jones's direct appeal from the judgment, *People v. Cielto* (Mar. 28, 2000, E025088) [nonpub. opn.]. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

3

animus against him during trial. Jones also separately alleged disparate impact RJA violations in charging and sentencing.

With respect to the alleged animus of the trial judge, Jones claimed that at sentencing the judge told Jones and his codefendant that they were "'monsters,'" while "on the record" referring to Jones's "crimes as 'heinous, evil and societally unforgivable.'" In a declaration supporting the petition, Jones attested: "During sentencing, the thing that stuck out the most for me was that the judge referred to us as 'monsters.' I remember the last thing he told us before pronouncing judgment was 'You're monsters!'" (The comment does not appear in the reporter's transcript of the sentencing hearing.)

As to the discriminatory animus of his trial counsel, Jones alleged that the clothes that his counsel brought for Jones to wear at trial "evoked stereotypes of a criminal black 'pimp daddy.'" Jones refused to wear those clothes and thus was forced to wear "his jail jumpsuit" throughout trial, because counsel did not provide any alternative, suitable clothing. In his supporting declaration, Jones stated that the clothes "were a comic, stereo-typical [*sic*] 'pimp' Halloween costume. The pants were purple polyester and the shirt was also made of polyester. They were very small and I thought it was better for me to wear an orange jumpsuit than those clothes."

The trial court denied the petition as to some claims but invited the District Attorney to file an informal response to others, including the alleged RJA violations involving the trial judge's comments at sentencing and the claim concerning the attire

4

that defense counsel brought for Jones to wear during trial.  The District Attorney argued that the trial court should not issue an order to show cause, because Jones failed to make a prima facie showing of entitlement to relief on the alleged RJA violations under the *Duvall* standard that generally applies to habeas corpus petitions.  In his reply, Jones argued that he made a prima facie showing under the standard set forth in the RJA.  (§ 745(h)(2).)

At the hearing on the amended petition, the District Attorney and Jones repeated the arguments they had made in their papers concerning the standard for a prima facie showing and whether Jones had met it.  The trial court concluded that under the plain language of subdivision (e) of section 1473 (section 1473(e)) the prima facie standard set forth in section 745(h)(2) applied to habeas corpus petitions alleging violations of the RJA.  Applying that standard, the trial court concluded that Jones had made a prima facie showing of entitlement to relief for the alleged RJA violations based on the trial judge's comments at sentencing and his trial counsel's conduct.  The court issued an order to show cause on those claims.

The District Attorney subsequently filed this petition for writ of mandate, challenging the trial court's application of the prima facie standard contained in section 745(h)(2).  We summarily denied the petition, but the California Supreme Court granted review and transferred the matter back to us with directions to issue an order to show cause.  The Supreme Court also issued a stay of the proceedings in the superior court pending further order of this court.

DISCUSSION

The District Attorney argues that the trial court erred by applying the prima facie standard described in section 745(h)(2) of the RJA to the RJA claims in Jones's habeas petition.  The District Attorney contends that the more demanding prima facie standard that generally applies to habeas petitions also applies to RJA claims raised in habeas petitions under section 1473(e).  We are not persuaded.

"In interpreting a statute, our task is to determine the Legislature's intent in order to effectuate the statute's purpose."  (*Gabriel M. v. Superior Court* (2024) 107 Cal.App.5th 446, 451)  "We first examine the statute's language, giving the words a commonsense and plain meaning."  (*Id.* at pp. 451-452.)  "If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend."  (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)  "We independently review questions of statutory interpretation."  (*Gabriel M.*, at p. 452.)

"The Legislature passed the RJA in 2020 with a stated aim 'to eliminate racial bias from California's criminal justice system" and "to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing.'"  (*People v. Wilson* (2024) 16 Cal.5th 874, 944-945 (*Wilson*).)  To that end, the RJA provides that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin."  (§ 745, subd. (a).)  The central provision of the RJA is codified in section 745.  (*Wilson*, at p. 945.)  Section 745 provides that one way in which

6

a defendant can establish a violation of the RJA is by demonstrating by a preponderance of the evidence that "[t]he judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (§ 745, subd. (a)(1).)

The RJA provides several avenues by which a defendant may raise an RJA claim, including by filing "a motion pursuant to this section, or a petition for writ of habeas corpus or a motion under Section 1473.7, in a court of competent jurisdiction, alleging a violation of subdivision (a)." (§ 745, subd. (b).) For "motions" alleging violations of the RJA, subdivision (c) of section 745 (§ 745(c)) provides that if "the defendant makes a prima facie showing of a violation of subdivision (a), the trial court shall hold a hearing." The provision sets forth the procedures for hearing and deciding such motions. (§ 745(c); *Wilson*, *supra*, 16 Cal.5th at p. 948.)

"The RJA also amended section 1473, which identifies bases for prosecuting a petition for writ of habeas corpus, to add a subdivision governing the litigation of RJA claims." (*Wilson*, *supra*, 16 Cal.5th at p. 945.) Section 1473(e) provides that "[n]otwithstanding any other law, a writ of habeas corpus may also be prosecuted after judgment has been entered based on evidence that a criminal conviction or sentence was sought, obtained, or imposed in violation of subdivision (a) of Section 745, if that section applies based on the date of judgment as provided in subdivision (j) of Section 745."

7

Although the RJA initially applied only prospectively to cases in which there was no final judgment when the statute became effective, the Legislature in 2022 extended the statute "to additional categories of cases, effective at various points over the next several years." (*Wilson*, *supra*, 16 Cal.5th at p. 946.) The RJA initially prioritized cases in which the judgment was not final (§ 745, subd. (j)(1)) over all other cases, followed by cases in which the defendant was sentenced to death (*id.*, subd. (j)(2)) or faced actual or potential adverse immigration consequences and the defendant filed a motion pursuant to section 1473.7 (§ 745, subd. (j)(2)). The RJA subsequently made relief available for those defendants, like Jones, whose judgments are final and who are currently incarcerated, with staggered effective dates over several years. (*Id.*, subd. (j)(3)-(5).) The Legislature amended the RJA to apply retroactively in order "to ensure equal access to justice for all." (Assem. Bill No. 256 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 739, § 1).)

Section 1473 generally governs petitions for writs of habeas corpus. The RJA amended section 1473 to add subdivision (e), which specifically addresses habeas petitions raising RJA claims. Under section 1473(e), "[t]he court shall review a petition raising a claim pursuant to Section 745 and shall determine if the petitioner has made a prima facie showing of entitlement to relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause why relief shall not be granted and hold an evidentiary hearing, unless the state declines to show cause." In addition, section 1473(e) provides for the appointment of

8

counsel under specified circumstances, allows appointed counsel to amend a habeas petition filed before they were appointed, and establishes that "a petition raising an RJA claim for the first time, or on the basis of new evidence, may not be deemed a successive or abusive petition." (*Wilson*, *supra*, 16 Cal.5th at p. 945.)

Subdivision (h) of section 745 defines various terms "[a]s used in this section," including "'[p]rima facie showing.'" (§ 745(h)(2).) "'Prima facie showing' means that the defendant produces facts that, if true, establish that there is a substantial likelihood that a violation of subdivision (a) occurred. For purposes of this section, a 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (*Ibid.*) Thus, the standard for making a prima facie showing is "lower than the preponderance of the evidence standard required to establish an actual violation of the Racial Justice Act." (*Finley v. Superior Court* (2023) 95 Cal.App.5th 12, 22 (*Finley*).)

The standard for making a "'[p]rima facie showing'" under section 745(h)(2) is also lower than the prima facie standard that generally applies in habeas corpus cases. (*Finley*, *supra*, 95 Cal.App.5th at p. 22.) In habeas corpus proceedings, the petitioner ordinarily "bears a heavy burden initially to *plead* sufficient grounds for relief." (*Duvall*, *supra*, 9 Cal.4th at p. 474.) The petitioner must "both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." (*Ibid.*; *Finley*, at p. 21.)

9

The District Attorney contends that the more demanding prima facie standard that generally applies to habeas petitions applies equally to habeas petitions alleging RJA violations. According to the District Attorney, the RJA does not contain "any language altering the *Duvall* prima facie standard for RJA habeas corpus claims." We disagree.

The text of the RJA contradicts the District Attorney's proposed interpretation of the statute. Section 1473(e) authorizes the filing of habeas petitions raising claims for "violation of subdivision (a) of Section 745." It also allows for an existing habeas petition to be amended to add a claim for "violation of subdivision (a) of Section 745." (§ 1473(e).) It provides for the appointment of counsel if either the state public defender requests appointment or "the petition alleges facts that would establish a violation of subdivision (a) of Section 745." (§ 1473(e).) And then it provides that a court "shall review" such a petition "*pursuant to Section 745* and shall determine if the petitioner has made a prima facie showing of entitlement to relief." (§ 1473(e), italics added.) "'In common understanding, the phrase "pursuant to" means "in conformance to or agreement with" and "according to.'"'" (*In re J.G.* (2019) 6 Cal.5th 867, 875.) Thus, by providing in section 1473(e) that the court "shall review" habeas petitions raising RJA claims "pursuant to" section 745, the Legislature expressly directed the court to review such petitions according to the provisions of section 745. (*J.G.*, at p. 875.) Doing so requires the court to apply the definitions in subdivision (h) of section 745. (§ 745, subd. (h) ["As used in this section, the following definitions apply"].) And one of those defined terms is "'[p]rima facie showing.'" (§ 745(h)(2).) Thus, by expressly directing courts to comply

10

with section 745 in analyzing habeas petitions alleging RJA violations, section 1473(e) requires that the standard for a prima facie showing applicable to those petitions is the standard defined in section 745(h)(2).

Application of that lower standard to habeas petitions (and not just to RJA motions under section 745(c)) aligns with the Legislature's purpose in making the RJA retroactive: "to ensure equal access to justice for all." (Stats. 2022, ch. 739, § 1.) Defendants alleging past violations of the RJA via habeas petitions under section 1473(e) bear the same burden of making a prima facie showing as defendants alleging RJA violations via motions under section 745(c). They all have equal access to justice, as the Legislature intended.

The District Attorney's petition, traverse, and response to the amicus brief never mention the "pursuant to Section 745" language in section 1473(e) and thus do not offer any alternative interpretation of it. Moreover, the arguments that the District Attorney does articulate are not persuasive.

First, the District Attorney contends that the prima facie standard defined in section 745(h)(2) applies only to motions alleging RJA violations and not to habeas corpus petitions. The District Attorney argues that limiting section 745(h)(2)'s prima facie standard to motions under section 745(c) and applying the higher *Duvall* standard to RJA claims in habeas petitions "is consistent with the RJA's statutory scheme of treating final cases differently than nonfinal one[s]." The District Attorney points out that defendants without final judgments may bring RJA claims via motions under section

11

745(c), incarcerated defendants with final judgments may bring such claims via habeas petitions, and defendants with final judgments who are no longer in custody may bring such claims via section 1473.7 motions. Thus, those three categories of defendants are treated differently, and the District Attorney concludes that applying different prima facie standards accords with that different treatment.

The argument is meritless because the Legislature expressly stated that its intent in making the RJA retroactive to final judgments was "to ensure equal access to justice for all." (Stats. 2022, ch. 739, § 1.) The finality of the judgment and the custodial status of the defendant will determine the appropriate procedural vehicle (section 745(c) motion, section 1473.7 motion, or habeas petition). But the Legislature made clear that, whatever the procedural vehicle, defendants should have equal access to justice under the RJA. The District Attorney never mentions that statement of legislative intent, and the District Attorney cites no support for the assertion that the Legislature actually intended the opposite, applying a higher standard to habeas petitions and thus making justice less accessible for defendants with final judgments.

Second, the District Attorney argues in a similar vein that "the RJA's staggered retroactivity demonstrates Legislative intent to treat final cases with more deference." The District Attorney describes the statute's retroactivity provisions (§ 745, subd. (j); see *ante* p. 8) and concludes that "[i]f the Legislature intended to make it as easy to attack final cases as nonfinal cases, there would be no carefully staggered system for collaterally attacking final judgments." The argument is meritless. The Legislature has made the

12

RJA retroactive to all final judgments. The fact that the Legislature did not provide for that retroactivity to take effect with respect to all final judgments *at once* has no tendency to show that the Legislature intended to make it harder for defendants with final judgments to obtain relief than defendants without final judgments. On the contrary, the Legislature stated that its intent in making the RJA retroactive was "to ensure equal access to justice for all." (Stats. 2022, ch. 739, § 1.) By creating a system of staggered retroactivity dates based on the date the judgment became final, the Legislature merely provided that certain cases could be brought before others, so that the burden placed on courts, prosecutors, and defense counsel handling RJA cases would be spread out over time. (See Sen. Com. on Appropriations, Analysis Addendum of Assem. Bill No. 256 (Reg. Sess. 2021-2022), Aug. 11, 2022, p. 1 [summarizing the increased workload costs to the superior courts estimated by the Judicial Council to be added by expanding the RJA to incorporate past violations].)

Finally, the District Attorney argues that a subsequent amendment to section 1473 demonstrates that the prima facie standard that generally applies to habeas petitions also applies to petitions alleging violations of the RJA. Effective January 1, 2024, Senate Bill No. 97 (Senate Bill 97) (2023-2024 Reg. Sess.) (Stats. 2023, ch. 381, § 1) amended section 1473 in numerous ways, including redesignating former subdivision (f) of section 1473 as section 1473(e) but with no substantive change. (Stats. 2023, ch. 381, § 1)

Senate Bill 97 also added the following subdivision to section 1473: "This section does not change the existing procedures for habeas relief." (§ 1473, subd. (c).)

According to the District Attorney, that new provision "makes clear that subdivision (e) [of section 1473] did not change existing procedures for habeas relief—which include the *Duvall* prima facie standard."

The argument is meritless. The meaning of the new subdivision is not clear, but we need not ascertain it. Whatever the meaning of subdivision (c) of section 1473, it did not alter the requirement in section 1473(e) that courts review RJA claims in habeas petitions "pursuant to Section 745." When Senate Bill 97 took effect, the procedures in section 1473(e) for RJA claims were already part of "the existing procedures for habeas relief." (§ 1473, subd. (c).) Thus, by its terms, subdivision (c) of section 1473 did not change them.

For the foregoing reasons, we conclude that the trial court did not err by applying the standard of section 745(h)(2) in determining whether Jones had made a prima facie showing of entitlement to relief for the RJA violations alleged in his petition for writ of habeas corpus under section 1473(e).[2]

---

[2] On October 13, 2025, the Governor signed into law two bills that amend section 745, section 1473, and other provisions of the RJA, effective January 1, 2026: Senate Bill No. 734 (2025-2026 Reg. Sess.) and Assembly Bill No. 1071 (2025-2026 Reg. Sess.). The amendments are consistent with our interpretation of the current statutory text. Uncodified legislative findings state that the Legislature intended to clarify "the RJA's procedures to assure its meaningful implementation" (Assem. Bill No. 1071, § 1(a)) and to reassert the low threshold required for a prima facie showing of a violation (*id.*, § 1(c)). One amendment to section 1473(e) provides: "Any and all definitions and legal thresholds specified in Section 745 are controlling for purposes of claims alleging a violation of subdivision (a) of Section 745 contained within a habeas petition filed under this section." (Assem. Bill No. 1071, § 3; Sen. Bill No. 734, § 3.5.)

## DISPOSITION

The petition for writ of mandate is denied.  The stay of proceedings in the superior court is lifted.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:


McKINSTER
Acting P. J.


MILLER
J.

15