Filed 3/20/26 In re M.C. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

In re M.C., a Person Coming Under the Juvenile Court Law.

THE PEOPLE,
Plaintiff and Respondent,
v.
M.C.,
Defendant and Appellant

A171921

(City & County of San Francisco Super. Ct. No. JW23-6068)

In this juvenile delinquency case, M.C. admitted, and the court found, that she committed one count of theft and unlawful driving or taking of a vehicle in violation of Vehicle Code section 10851, subdivision (a), a misdemeanor. As part of the disposition, the trial court ordered restitution to the owner of the car, which was rendered nonoperational as a result of M.C.'s conduct. M.C. now appeals from the trial court's order setting the restitution amount at $12,130. We affirm.

## BACKGROUND

At the restitution hearing, E.B.[1] testified that, before M.C. stole her 2016 Kia Soul in March 2023, the car was undamaged and she considered it to be in "brand new" condition. She relied on her car for her daily commute between her home in Antioch and her job as a certified nursing assistant in San Francisco, for which she earned about $254 a day. Before arriving for each 7:00 a.m. work shift, she had to drive from Antioch to Concord to drop off her autistic child with her child care provider, and then drive from Concord to San Francisco.

When the car was recovered, however, it was "not drivable." The ignition had been "ripped . . . out," the front bumper was "totally torn off," the rear bumper was "demolished," and the side panel was "smashed in." E.B. had to have the car towed to an auto body shop. Because she no longer had a drivable car, E.B. missed 15 days of work.

E.B. had taken out a "high interest" car loan to purchase the car in October 2022, with her parents supplying the $1,000 down payment. She could not recall the sticker price of the car, but her monthly loan payment was about $495. At the time it was stolen, the unpaid balance on the loan was $18,488.77. The loan company subsequently agreed to settle the account for $8,320, which reflected a 55 percent reduction in the balance owed.

Within about a month of the offense, E.B.'s car insurance company sent an adjustor to inspect the car. The company told E.B. the car was fixable and "they would give [her] $3,000 for it." Shortly after the adjustor inspected the car, the auto body shop informed E.B. that the repairs would cost $10,000. However,

---

[1] Although the victim's name appears differently in some parts of the record, this opinion refers to her as "E.B." based on the name she provided when testifying at the restitution hearing.

because E.B. could not afford to fix her car and left it at the auto body shop for an extended period, the shop placed a lien on her car and eventually fixed and sold it.

E.B. requested and the court ordered restitution in the amount of $12,130, which reflected the $8,320 loan settlement amount and $3,810 in lost wages.

## DISCUSSION

M.C. contends that the trial court abused its discretion in ordering her to pay $12,130 in victim restitution. We disagree.

At the time of M.C.'s 2024 restitution hearing, Welfare and Institutions Code section 730.6[2] provided that the court "shall order full restitution" in "a dollar amount sufficient to fully reimburse the victim . . . for all determined economic losses incurred as the result of the minor's conduct." (Former § 730.6, subd. (h)(1); see also former § 730.6, subd. (a)(1).) After the victim makes a prima facie showing of economic losses due to the minor's conduct, the burden shifts to the minor to disprove the claimed loss amounts. (*People v. Superior Court (Lauren M.)* (2011) 196 Cal.App.4th 1221, 1226 (*Lauren M.*).) The preponderance of the evidence standard applies at a restitution hearing, and on review we will not find an abuse of discretion as long as the restitution award has a rational and factual basis. (*In re S.E.* (2020) 46 Cal.App.5th 795, 803-804.)

---

[2] Undesignated statutory references are to the Welfare and Institutions Code. Because M.C. does not assert error based on subsequent amendments to the statute, all references to section 730.6 are to the version in effect at M.C.'s November 21, 2024 restitution hearing. (See Sen. Bill No. 651 (2015-2016 Reg. Sess.), Stats. 2015, ch. 131, § 1, eff. Jan. 1, 2016.) In the current version of the statute, subdivision (h)(1) is subdivision (b)(1). (See Assem. Bill No. 1186 (2023-2024 Reg. Sess.), Stats. 2024, ch. 805, § 6, eff. Jan. 1, 2025.)

As relevant here, restitution may include "[f]ull or partial payment for the value of stolen or damaged property" as well as the victim's lost wages. (Former § 730.6, subds. (h)(1)(A), (h)(1)(C)-(D).) Further, at the time of M.C.'s sentencing hearing, former section 730.6, subd. (h)(1)(A) provided that "[t]he value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible."[3] We construe these provisions liberally in light of the goals of victim restitution—making the victim whole, rehabilitating the minor, and deterring delinquent conduct in the future. (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305 (*Luis M.*).)

**A.**

M.C. challenges the court's decision to include restitution in the amount of $8,320, representing E.B.'s remaining auto loan balance after the loan company agreed to settle for a 55 percent reduction in the outstanding loan amount. According to M.C., the loan settlement amount was not rationally related to the loss she caused and exceeded the cost of repairing the car. We discern no abuse of discretion by the trial court.

M.C. contends that the evidence did not establish that the loan balance was calculated based on either the replacement cost or the repair cost of the car, but whether that is so matters not given that the loan balance was in any event less than the $10,000 repair quote provided by the auto body shop. Given the substantial evidence in the record that the cost of repairing the vehicle was $10,000, the trial court had discretion to order M.C.

[3] Effective January 1, 2025, the Legislature amended section 730.6 to provide that the value of stolen or damaged property shall be either the replacement cost or the repair cost, "whichever is less." (See § 730.6, subd. (b)(1)(A), as amended by Stats. 2024, ch. 805, § 6.) M.C. does not assert error based on this amendment.

to pay that amount for the loss of the car. (Former § 730.6, subd. (h)(1)(A).) Instead, the trial court reasonably ordered M.C. to pay a lesser amount, $8,320, to reimburse E.B. for the outstanding loan balance that she was obligated to pay even though, due to M.C.'s conduct, she no longer had a drivable car. (Cf. *People v. Dalvito* (1997) 56 Cal.App.4th 557, 560-561 (*Dalvito*) [upholding a restitution award of $15,950, the amount of a jeweler's debt on a diamond necklace stolen by the defendant].)

We are unpersuaded by M.C.'s contention that the $8,320 loan balance exceeded the car's reasonable repair cost. According to M.C., the auto body shop's $10,000 quote for fixing the car was unreasonably high because it improperly included fees for storing the car, but that assertion is unsupported by the record. E.B. testified that "[t]he auto body shop wanted $10,000 to fix" the car. The quote reflected that the car needed a new ignition as well as several other repairs, as the front, rear, and side panels of the car were all damaged as a result of M.C.'s conduct. M.C. cites to a portion of the hearing transcript in which her attorney asked E.B.: "The person that wanted 10,000 was had [*sic*] the auto body your [car was] towed to that charged you every day for stowing the car essentially; right?" E.B. responded, "I guess." At best, this ambiguous exchange suggested that the auto body shop was also charging storage fees—but it did not establish that the $10,000 quote included those fees. Even if it did, M.C. does not explain why the storage fees must be excluded from the repair cost, or why they otherwise fail to qualify as economic loss. Indeed, M.C. acknowledges that the "court could have determined that it was reasonable for the restitution award to cover some duration of storing the car because the shop could not have repaired it immediately."[4] In the face of E.B.'s prima facie

---

[4] E.B. testified that she obtained the $10,000 quote "[p]robably within a month" of her car being stolen, contradicting

showing, it was M.C.'s burden to disprove the amount of loss she asserted. (*Lauren M.*, *supra*, 196 Cal.App.4th at p. 1226.) And ultimately, the trial court was not required to determine the "exact dollar amount" of the victim's losses, so long as the calculation has "some factual nexus to the damage caused by the minor's conduct"—a standard met here. (See *Luis M.*, *supra*, 59 Cal.4th at p. 309.)

Nor has M.C. established that that the $3,000 figure offered by the insurance company was "the only reasonable value of the repair cost in the record." When M.C.'s counsel attempted to clarify the basis for the $3,000 figure, asking E.B., "$3,000 is what the adjustor said was the amount to fix the car," E.B. responded "No. No." E.B. explained that the insurance adjustor said the company would give her $3,000 "[t]o take to the auto body [shop] to give them to fix my car and the auto body shop said that's not enough." Her testimony that the insurance company offered to pay her $3,000 does not establish that the amount represented an assessment of the actual cost of repair, let alone the only reasonable one; there was no evidence concerning the applicable terms of E.B.'s policy or how the insurance company calculated the payment amount, and her unrebutted testimony was that the auto body shop said that $3,000 was "not enough" to fix the car.

**B.**

M.C.'s challenge to the trial court's inclusion in the restitution order of $3,810 for lost wages fares no better. According to M.C., the amount of lost wages was unreasonable because E.B. should have mitigated her losses by taking a car service to and from public transportation to commute to work. We conclude otherwise.

---

M.C.'s contention that the $10,000 figure included six months of storage fees.

E.B. relied on her car to commute between her home in Antioch, her child care provider's home in Concord, and her job in San Francisco. She testified that, although there is a Bay Area Rapid Transit (BART) station in Antioch, neither her home nor her child care provider's home were located near a BART station. She did not have money in her budget to pay for a car service, and there was no bus line between her home and the nearest BART station, so to get from home to the BART station, she would need to drive on the freeway. E.B. also explained that, although she had asked her car insurance company for a rental car, the company informed her that her policy did not include such coverage.

Based on the record, the upshot of M.C.'s argument is that, to avoid missing work, E.B. should have, in the early morning hours, taken a car service with her autistic child to the Antioch BART station, taken BART to Concord, taken another car service from the Concord BART to her child care provider, dropped her child off, returned via car service to the Concord BART station, and then taken BART to arrive at her 7:00 a.m. work shift in San Francisco, presumably reversing this process for her return commute. We disagree that the victim had an obligation to mitigate her losses in this way. (See *Lauren M.*, *supra*, 196 Cal.App.4th at p. 1226 [holding that the victim was not required to seek a discount for her medical bills, and was entitled to restitution in the billed amount]; *In re Dina V.* (2007) 151 Cal.App.4th 486, 488-489 [concluding that the victim was not required, at their own time and expense, to replace the damaged vehicle by searching for a similar vehicle in a similar pre-crime condition, even if repairing the vehicle was more expensive]; cf. *Dalvito*, *supra*, 56 Cal.App.4th at p. 561 [holding that the defendant was not entitled to a reduction in the restitution amount based on "[w]hatever actions were taken by the victim of defendant's crime . . . to mitigate the damage caused by defendant"].) Based on the evidence establishing that E.B. relied

on her car for her considerable commute, and that, as a result of M.C.'s conduct, she was unable to drive to work for 15 days, the trial court's order was within its discretion.

## DISPOSITION

The trial court's November 21, 2024 restitution order is affirmed.

BURNS, J.

WE CONCUR:

JACKSON, P. J.
SIMONS, J.

*In re M.C. / People v. M.C.* (A171921)